1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

| ANDREH BOLANDI, | Case No. 5:26-cv-00628-MCS-AGR |
|---|---|
| Petitioner, | **ORDER RE: EX PARTE APPLICATION FOR TEMPORARY RESTRAINING (ECF NO. 5) AND MOTION TO DEEM RESPONDENTS' OPPOSITION WAIVED (ECF NO. 8)** |
| v. | |
| KRISTI NOEM, Secretary of the Department of Homeland Security, et al., | |
| Respondents. | |

        Petitioner Andreh Bolandi brings this action for a writ of habeas corpus. (Pet., ECF No. 1.) Petitioner filed an ex parte application for a temporary restraining order. (Appl., ECF No. 5.) The Court ordered briefing on the motion. (Order Setting Br. Schedule, ECF No. 6.) Respondents Kristi Noem, in her official capacity as the Secretary of the Department of Homeland Security ("DHS"); Todd D. Lyons, in his official capacity as the Acting Director of Immigration and Customs Enforcement ("ICE"); and the Warden of the ICE Adelanto Processing Center filed a brief indicating they "do not have an opposition argument to present." (Resp., ECF No. 9.) The Court deems the application appropriate for decision without oral argument and abrogates the hearing set for February 23, 2026. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

1

# I.    BACKGROUND

According to the petition and application materials, Petitioner was born in Iran. (Bolandi Decl. ¶ 1, ECF No. 5-2.) In 1990, when he was ten years old, he and his family fled Iran and went to Germany. (*Id.* ¶ 2.) They stayed in Europe for six-and-a-half years before coming to the United States in 1996. (*Id.*)

In 2003, Petitioner was convicted for manufacturing methamphetamine. (*Id.* ¶ 3.) He served three-and-a-half years in prison and was released in 2008. (*Id.*) Upon his release, he was detained by ICE. (*Id.* ¶ 4.) An immigration judge thereafter issued a final removal order, and Petitioner was detained for approximately ninety days. (*Id.*) After ICE was unable to procure travel documents for Petitioner back to Iran, ICE released him from custody pursuant to an Order of Supervision. (*Id.*; Jalaie Decl. ¶ 3, ECF No. 5-3.) Per an instruction from his ICE case officer, he went to the Iranian Consulate to request travel documents. (Bolandi Decl. ¶ 5.) The Consulate gave him a written notice indicating that it could not issue travel documents to Petitioner at that time, which Petitioner then provided to his case officer. (*Id.*) Since his 2008 release from ICE custody, he has remained under the Order of Supervision and has reported to ICE for periodic check-ins as directed. (*Id.* ¶ 6.)

While he claims he has been "clean and sober" and "complied with the requirements of his supervision" since 2008, (*id.*), he concedes he was arrested for possession of a controlled substance in late 2024, though the case was ultimately dismissed, (*id.* ¶ 8). He was also arrested in the summer of 2025 for domestic violence, but that case was also dismissed. (*Id.* ¶ 9.) In October or November of 2025, he was arrested again, this time for possession of prescription pain medication. (*Id.*) After he missed a court date relating to that case, the judge issued a warrant, and Petitioner was arrested a fourth time. (*Id.*) Petitioner claims he missed the court date because the "case was initially filed in the San Fernando Courthouse but was later transferred to the Santa Clarita Courthouse," and he "was not aware that the venue had been changed." (*Id.*) He posted bail and was released on January 24, 2026. (*Id.* ¶¶ 9–10.) When he was released

from jail, ICE agents were waiting for him. (*Id.* ¶ 10.) The agents informed Petitioner that they had a warrant for his arrest, though they did not show him any paperwork. (*Id.*) The agents took him to 300 North Los Angeles Street, where an officer informed Petitioner he "needed to sign paperwork." (*Id.* ¶ 12.) When Petitioner asked whether his attorney could review the documents, the officer maintained that Petitioner "had to sign it." (*Id.*) Though Petitioner ultimately refused to sign the paperwork, he asserts that no officer explained to him why his Order of Supervision was being revoked or gave him any written notice explaining the basis for his detention. (*Id.*) Since then, he has been detained at the Adelanto GEO Detention Facility. (*Id.* ¶ 13.) As of February 11, 2026, Petitioner still had not been provided with the warrant the ICE officers purported to have when they detained him, nor has he been given a written explanation as to why his supervision had been revoked. (*Id.* ¶ 16.)

Petitioner claims that his detention violates the Due Process Clause of the Fifth Amendment, the Administrative Procedures Act, and the Immigration and Nationality Act. (Pet. 7–8.) He seeks an order directing Respondents to immediately release him from custody, as well as enjoining Respondents from re-detaining him unless they "follow the proscribed [sic] regulations in connection with his detention." (Mem. in Support of Appl. 22, ECF No. 5-1.) He also seeks an order directing Respondents to provide Petitioner with notice and opportunity to challenge any potential removal to a third country. (*Id.*)

## II.   LEGAL STANDARD

The standards governing temporary restraining orders and preliminary injunctions are essentially the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The Ninth Circuit also employs a "version of the sliding scale approach" where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, an injunction may issue if the plaintiff shows that serious questions go to the merits, the balance of hardships tips sharply toward the plaintiff, the plaintiff is likely to suffer irreparable injury, and an injunction is in the public interest. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021).

## III.   DISCUSSION

As an initial matter, Respondents filed their response at 12:44 p.m. on February 17, 2026, 44 minutes after the 12:00 p.m. deadline set by the Court's prior order. (Order Setting Br. Schedule 2.) The Court exercises its discretion to consider Respondents' untimely response. Before Respondents filed their untimely response, Petitioner filed a motion to deem Respondents' opposition waived and to decide the TRO application as unopposed. (Mot., ECF No. 8.) Because the response was essentially a notice of non-opposition to the application, and given the Court's resolution of the application discussed *infra*, the Court denies Petitioner's motion as moot.

The Court has jurisdiction to consider Petitioner's claims under 28 U.S.C. § 2241. *See Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) ("The writ of habeas corpus historically provides a remedy to non-citizens challenging executive detention.").

Respondents have conceded that Petitioner is likely to succeed on the merits of his claim that Respondents did not follow their governing regulations and thus violated his due process rights. (Mem. in Support of Appl. Appl. 8–17; Pet. 7.)[1] Detention,

---

[1] The Court does not opine on Petitioner's likelihood of success on the merits of his other claims.

release, and removal of individuals subject to a final order of removal is governed by 8 U.S.C. § 1231(a). *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). Generally, the Attorney General must remove a noncitizen within 90 days of a final removal order. 8 U.S.C. § 1231(a)(1)(A). If the noncitizen is not removed during that period, he or she "shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3).

8 C.F.R. §§ 241.4 and 241.13 govern both the release of noncitizens pursuant to 8 U.S.C. § 1231(a) and the revocation of that release. *Hashemi v. Noem*, No. 2:25-cv-10335-HDV-SR, __ F. Supp. 3d __, 2025 WL 3468694, at *4 (C.D. Cal. Nov. 19, 2025). Both sections permit the government to revoke a noncitizen's release when the noncitizen violates the terms and conditions of release, as well as when the government determines, based on "changed circumstances," that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. §§ 241.4(l)(1), 241.13(i). The regulations also establish required processes the government must follow when it revokes a noncitizen's supervision. *See* 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3). The regulations require that the noncitizen be (1) "notified of the reasons for revocation of his or her release," and (2) given "an initial informal interview promptly after his or her return to . . . custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* If the noncitizen is still detained after the informal interview, the government must schedule the noncitizen for the "normal review process," which includes a notification of a records review and the scheduling of a formal interview. *Id.* § 241.4(l)(3); *accord id.* § 241.13(i)(2). Essentially, "in order to revoke release, the government must notify the noncitizen of the *reason* for the revocation and give them both an *informal and formal interview*." *Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *4 (C.D. Cal. Aug. 28, 2025); *see also De Jesus Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *5 (E.D. Cal. Sept. 5, 2025).

8 C.F.R. § 241.4(l) also limits the officials who are authorized to revoke release

to the "Executive Associate Commissioner" and the "district director." 8 C.F.R. § 241.4(l)(2). These titles refer to positions that existed under the old Immigration and Naturalization Service regime that was in place before Congress created the Department of Homeland Security and "transferred all functions related to the detention and removal of noncitizens to the Secretary of Homeland Security." *See Gazazyan v. Bondi*, No. 5:25-cv-02599-SRM-DTB, 2025 WL 3898484, at \*5 (C.D. Cal. Nov. 7, 2025). Today, "Commissioner" is understood to refer to the Director of U.S. Citizenship and Immigration Services, the Commissioner of U.S. Customs and Border Protection, and the Director of U.S. Immigration and Customs Enforcement, as appropriate in the context in which the term appears." *Id.* (citing 8 C.F.R. § 1.2). The term "district director" is now understood to refer to an "asylum office director; director, field operations; district director for interior enforcement; district director for services; field office director; service center director; or special agent in charge." *Id.* (citing 8 C.F.R. § 1.2).

A growing number of courts have concluded that "the government's failure to follow its release revocation procedures," especially the failure to provide a noncitizen notice and an interview, "renders the re-detention unlawful" because it violates the noncitizen's due process rights. *Delkash*, 2025 WL 2683988, at \*5 (collecting cases); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 166 (W.D.N.Y. 2025) ("[B]ecause ICE did not follow its own regulations in deciding to re-detain Ceesay, his due process rights were violated, and he is entitled to release."); *accord Morales Sanchez v. Bondi*, 5:25-cv-02530-AB-DTB, __ F. Supp. 3d __, 2025 WL 3651899, at \*3 (C.D. Cal. Dec. 5, 2025) (concluding that "ICE's compliance with the regulatory framework is a proper and enforceable basis for review"). Respondents have offered no argument as to why the Court should disregard this persuasive body of authority.

Here, Petitioner contends—and Respondents have not disputed—that ICE violated 8 C.F.R. §§ 241.4(l) and 241.13(i) when it revoked Petitioner's release. (*See* Mem. in Support of Appl. 13–17.) In particular, Petitioner argues (1) he was never

provided with adequate notice establishing the basis for the revocation of his release; (2) he was never provided with an informal interview to meaningfully respond to the basis for the revocation; and (3) Respondents have not shown that an authorized official revoked his release. (*Id.*) Because Respondents have not disputed that they violated their own governing regulations in revoking Petitioner's release, they have conceded that Petitioner is likely to succeed on the merits of his claim. Respondents have also conceded that Petitioner is suffering and will continue to suffer irreparable harm through his continued detention and that the balance of equities and public interest tip sharply in Petitioner's favor. Respondents have thus conceded that Petitioner is entitled to preliminary injunctive relief. An order directing Petitioner's forthwith release is the appropriate remedy for this procedural violation. *See Nazarian v. Noem*, No. EDCV 25-02694-KK-ADSx, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025) (collecting cases).

The Court exercises its discretion not to require a security. Fed. R. Civ. P. 65(c); *see Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("Rule 65(c) invests the district court with discretion as to the amount of security required, *if any.*" (internal quotation marks omitted)); *cf. Rodriguez-Flores v. Semaia*, No. CV 25-6900 JGB (JCx), 2025 U.S. Dist. LEXIS 192394, at *14 (C.D. Cal. Aug. 14, 2025) ("Due to the minimal harms suffered by the government, the Court will not require a security.").

## IV.  CONCLUSION

The Court grants the application in substantial part. The Court issues a temporary restraining order as follows:

1.  Respondents shall release Petitioner from detention forthwith.
2.  Respondents and all of their officers, agents, servants, employees, attorneys, and persons acting on their behalf, in concert, or in participation with them are enjoined from re-detaining Petitioner absent compliance with their governing regulations.

/ / /

1    The Court declines to provide other relief requested in the application at this time.

2    Petitioner's motion to deem Respondents' opposition as waived and to decide the

3    application as unopposed is denied as moot. Pursuant to General Order No. 05-07,

4    further proceedings on the merits of the petition are referred to the assigned magistrate

5    judge.

6

7    **IT IS SO ORDERED.**

8

9    Dated: February 19, 2026

10                                                                    _____

                                                                      MARK C. SCARSI

11                                                                    UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28